# Dickinson, *et al. v.* National Bank of the Republic.

*Suit by Simple Contract Creditor to Subject Proceeds of Property Fraudulently Transferred by Debtor.*

1 *Section 3544 of the Code, remedial.*—Prior to the enactment of § 3544 of the Code, a simple contract creditor had no remedy by bill in equity to subject property fraudulenly transferred by his debtor. This statute was enacted to cure that disability, and should be liberally construed to effect the object to be accomplished.

2. *Same.*—Thus construed, § 3544 was manifestly intended to confer upon simple contract creditors the same rights and remedies which judgment creditors, who had exhausted their legal remedies, then had, to reach, through the Chancery Court, property of the debtor, which had been fraudulently conveyed by him.

3. *Proceeds of Property followed in equity.*—A court of equity follows the proceeds of property fraudulently transferred, and affords a remedy to the creditor seeking to subject it, by turning the legal

[Dickinson, et al. v. National Bank of the Republic.]

owner into a trustee for the benefit of creditors. The proceeds may be followed into any property in which it has been invested, so far as it can be traced.

APPEAL from Barbour Chancery Court.

Heard before the Hon JNO. A. FOSTER.

The bill in this case was filed by the National Bank of the Republic, of New York, against H. Dickinson and others, in which it was sought to subject to the payment of a debt due from said Dickinson to the complainant, the proceeds arising from the sale by said Dickinson, of a stock of merchandize, notes, accounts &c., which, it was alleged, had been attempted to be sold for the purpose of hindering, delaying or defrauding the complainant in the collection of his said debt. The bill further alleged that the transferees of the property thus disposed of, participated in the said fraudulent intent of said Dickinson. The bill was filed under the provision and authority conferred by section 3544 of the Code. A demurrer was interposed by the respondents, raising the question, whether said section of the Code gave the power to subject the *proceeds* of property fraudulently transferred or conveyed, as well as the property itself. The demurrer denied that the provisions of the statute extended to the proceeds of property that had passed out of the possession of the debtor. The court overruled the demurrer, and this appeal is taken from that ruling of the chancellor.

S. H. DENT, JR., for appellants, cited *McKenzie v. M. & F. Railway Co.*, 85 Ala. 546 ; *Smith v. Cockrell*, 66 Ala. 64; *Scott v. Neely*, 140 U. S. 106; Section 3544, Code of Ala. ; *Teague v. Martin*, 87 Ala. 500 ; *Jones v. Smith*, 92 Ala. 455.

A. H. MERRILL, for appellee, cited, Wait on Fraudulent Conveyances and Creditors bills, §§ 177–8, pp. 254–5–6 ; *Ferguson v. Hillman*, 55 Wis. 190 ; *Mason v. Pierson*, 69 Wis. 585 ; *Gardinier v. Otis*, 13 Wis. 460 ; *Stein v. Herman*, 23 Wis. 132 ; *Avery v. Johnson*, 27 Wis. 246 ; *Union Nat. Bank v. Warner*, 12 (Hun.) N. Y., 306 ; *Briggs v. Merrill*, 58 Barb. 389 ; *Fullerton v. Viall*, 42 Howard Practice, 294; *Murtha v. Gurley*, 90 N. Y. 372; *Solinsky v. Lincoln Savings Bank*, 85 Tenn. 372 ; *Quinby v. Strauss*, 90 N. Y. 664.

HEAD, J.—Section 3544 of the Code, reads as follows : "A creditor without a lien may file a bill in Chancery to discover or to subject to the payment of his debt any property which has been fraudulently transferred or conveyed by his debtor."

[Dickinson, et al. v. National Bank of the Republic.]

H. Dickinson, a debtor by simple contract merely, to the complainant, The National Bank of the Republic, as the bill avers, with intent to hinder, delay or defraud his creditors, sold and transferred to his co-defendants the stock of goods and other property mentioned in the bill, of value more than sufficient to pay complainants' debt, which property the said fraudulent purchasers afterwards sold, and appropriated the proceeds thereof to their own use. The averments of the bill make a clear case of fraudulent disposition of the property by Dickinson, participated in by the purchasers. The bill prays for an accounting to ascertain the amount of complainant's demand, and also to ascertain the value of the property which went into the possession of said purchasers, under the fraudulent sale, and, on final hearing, for personal decrees against the defendants, for the amount found due complainant, and for general relief.

The question is raised by demurrer whether the statute above copied should be so interpreted as that the remedy therein provided can be made to reach the *proceeds* of property fraudulently conveyed by the debtor, in the hands of the purchaser, who, after the sale, converted it; or whether the remedy is confined to a subjection of the property itself, to the payment of the creditor's demand.

Prior to this statute, a creditor by simple contract had no remedy, by bill in equity, to reach and subject property fraudulently transferred by his debtor. Only creditors who had reduced their demands to judgment and exhausted their legal remedies against the debtor, could obtain such relief in the Chancery Court. The statute was enacted to cure that disability. It is remedial in its nature, and must receive that liberal construction and enforcement which will give full effect to the beneficial objects the legislature intended to be accomplished. It will not be expounded by any narrow or strict rules of interpretation tending to impair the efficiency of the remedy given. 2 Br. Dig. 461, §§ 16, 17. *Jones v. Smith*, 92 Ala. 455. Thus construed, it is manifest the purpose was to confer upon simple contract creditors the same rights and remedies which judgment creditors, who had exhausted their legal remedies, then had to reach, through the Chancery Court, property of the debtor, liable to satisfy debts, which had been fraudulently conveyed, or attempted to be fraudulently conveyed by the debtor. *Weiss v. Goetter, Weil & Co.*, 72 Ala. 259; *Bromberg Bros. v. Heyer Bros.* 69 Ala. 22; *Reynolds v. Welsh*, 47 Ala. 200; *Evans v. Welsh*, 63 Ala. 250. In determining

[Dickinson, et al. v. National Bank of the Republic.]

the question now presented, we may, therefore, have re-course to precedents and adjudged cases touching the rights and remedies of such judgment creditors, in respect of the subjection by bill in equity of the proceeds of fraudulently assigned property, in the hands of the fraudulent grantee or donee.

In *Ferguson v. Hullman,* 55 Wis. 190, the court, in a case in principle like the present, used this language : "If the fraudulent grantee in possession of the property of the debtor can not be protected for the money or other con-sideration he may have given for the transfer, as against the creditors of such debtor, it would seem to follow as a necessary consequence that such grantee can not be protected in the possession of the proceeds of such property re-ceived by him on a sale thereof. The property in the hands of the fraudulent purchaser is held by him in trust for the creditors of his fraudulent vendor, and when the property is converted into money, the money is impressed with the same trust. The original conveyance being void as to creditors, no title as them ever passed to the grantee ; and if he sells it and receives the money, he must hold the money for the benefit of creditors. In equity, such money in the hands of the fraudulent grantee is held for the benefit of the creditors ; and, although they may not be able to maintain an action at law for money had and re-ceived for their use, because they were never the owners of, or had the title to the property which has been convert-ed into such money, yet a court of equity, having all the parties interested before it, may make such order as to the application thereof as would be just. If the court, in a proper case, would have the power to order the fraudu-lent grantee to pay money received by him in satisfaction of the debt of a creditor, then the fact that it directed a personal judgment to be rendered against him for the money so received, and that the amount be collected on execution, would be a mere matter of form, which does not prejudice his rights, and of which he can not complain."

This doctrine is fully sustained by the following authori-ties : *Fullerton v. Viall,* 42 How. Pr. 294 ; *Gillett v. Bate,* 86 N. Y. 87 ; *Quinby v. Strauss, Ib.* 664 ; *Murtha v. Gurley,* 90 N. Y. 372 ; *Post v. Stiger,* 29 N. J. Eq. 558 ; *Solinsky v. Lincoln Sav. Bank,* 85 Tenn. 372 ; Waite Fraud. Conv. § 177, *et seq.* Bump on Fraud. Con., citing many authorities, states it as follows : "The grantee is construed to be a trustee for the creditors, and as such is responsible for all his acts in dis-posing of the property fraudulently conveyed to him. If he

has parted with it he must account for the value. *Is autem dolo malo emit, bona fide autem ementi vendidit, in solidum pretium rei quod accepit tenebitur.* A court of equity follows the proceeds of the property and affords a remedy by turning the legal owner into a trustee for the benefit of creditors. The proceeds may be followed into any property in which it has been invested so far as it can be traced. The grantee is liable for property which he has converted to his own use. If he sells the property and receives insufficient security, the loss falls upon him and not upon the creditors. If he impedes the creditors by unnecessary litigation, he will be held to make good all loss which may be occasioned by his unjust interference. When he gives notes as a consideration for the transfer, he furnishes the debtor with facilities for defrauding his creditors and will therefore be held liable for the notes that are misapplied. If the property has been mixed with other property of the grantee so that the proceeds can not be ascertained he may be charged with the value and interest thereon." Bump on Fraud. Conv. 608.

We are entirely satisfied with the correctness of the principles here stated, and hold that, under our statute, they apply in behalf of a simple contract creditor, proceeding by bill in equity, to the same extent that they are applicable in behalf of judgment creditors who have exhausted their legal remedies. The proceeds of the property fraudulently conveyed, in the hands of the fraudulent vendee, may be condemned and ordered paid to the creditor, or the right enforced against the vendee by personal decree and execution. So, also, if the goods have been otherwise converted or appropriated by the fraudulent vendee, he is liable, upon an accounting, by personal decree and execution, to pay the value thereof, in discharge of the claim of the creditor.

The bill contains equity, and the demurrer was properly overruled.

Affirmed.