PEMISCOT COUNTY BANK *v.* CENTRAL STATE NAT. BANK
*et al.*  (No. 21.)

(*Jackson.*  April Term, 1916.)

1. **BANKS AND BANKING.** **Cashier.** **Duties of.** **"Partner-ship."**

Where a bank cashier who was also a member of a firm issued a draft to pay a firm obligation embezzling the bank's funds in his capacity as cashier, the bank cannot recover from the payees the amount of the draft on the theory that the cashier was merely paying his own obligation; for the commercial idea is that a partnership is practically an entity separate from the members composing it; this being particularly true as the name of the partnership indicated it was a corporation (citing Words and Phrases, Partnership). (*Post, pp.* 15-17.)

Cases cited and approved:  Holmes v. Sarrett, 54 Tenn., 506; Lacey v. Cowan, 162 Ala., 546; House v. Thompson, 40 Tenn., 512.

Case cited and distinguished:  Menagh v. Whitwell, 52 N. Y., 146.

2. **CORPORATIONS.** **Names.** **Presumptions.**

The name "Tindle Cotton Company" is *prima facie* that of a corporation, and not a partnership, and will be so treated by way of presumption in the absence of proof. (*Post, pp.* 17, 18.)

Case cited and approved:  Ingle System Co. v. Norris, 132 Tenn., 472.

---

FROM SHELBY

---

Appeal from the Chancery Court of Shelby County.—F. H. HEISKELL, Chancellor.

BOYD & BEJACH, for appellant.

JOHN D. MARTIN, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is a branch of a case that was before this court at the last term, in which an opinion was delivered under the same name style. 132 Tenn., 152, 177 S. W., 74.

The present appeal involves an alleged demand of the Pemiscot County Bank of Caruthersville, Mo., against Flippin & Jones, a copartnership engaged in business at Memphis. This firm had transactions with Tindle Cotton Company, a firm whose place of business was at Caruthersville, Mo. The last-named firm was composed of Tindle, Roberts and Johnson. To collect an indebtedness due from the Missouri to the Memphis firm, the latter drew a draft for $1059.75 on Tindle Cotton Company, and deposited same in the Central State Bank at Memphis for the purpose of having it forwarded to Caruthersville for realization. The Memphis bank sent the draft to complainant bank, and upon its arrival A. C. Tindle, who was cashier of the complainant bank and a member of the Tindle Cotton Company, acting in his capacity of cashier, issued and mailed to the Memphis bank exchange covering the above and another collection item of $4000, making an aggregate of $5059.75, as follows:

"Pemiscot County Bank,
"No 65226.

"Caruthersville, Missouri, Nov. 16, 1912.

"Pay to the order of Central State Bank five thousand and fifty-nine and 75/100 dollars ($5059.75).

A. C. TINDLE, Cashier.

"To National Bank of Commerce, St. Louis, Mo."

The proceeds realized from the St. Louis bank were credited by the Memphis bank to Flippin & Jones and checked out by them in due course of business.

The Tindle Cotton Company paid no consideration to complainant bank for the draft, and its issuance was, as was later developed, in fact, an act of embezzlement on the part of its cashier. However, the Memphis firm did not know whether the Tindle Cotton Company was a corporation or a partnership, and had no knowledge that Roberts and Johnson were partners of Tindle. They were personally acquainted with A. C. Tindle, and all of their transactions with the Tindle Cotton Company were with and through him.

The appellant bank, complainant below, seeks to differentiate this case from the one reported 132 Tenn., 152, 177 S. W., 74. It was there held that, where a draft on this bank was drawn by Tindle, who was also president of a mercantile corporation, which draft was signed by him as cashier in favor of the corporation's creditor, no notice of embezzlement or of an exceeding of authority by the cashier was thereby imparted.

Counsel for appellant seek to distinguish the two cases on the ground that in the pending case the con-

cern favored by the cashier's act of embezzlement was a firm of which he was a member, instead of a corporation that was controlled by him.

We think the appeal should fail, and that the chancellor's ruling in favor of the Memphis firm should be affirmed.

While a partnership is not, strictly speaking, a person (*Holmes* v. *Sarrett,* 7 Heisk. [54 Tenn.], 560), yet it may be called a quasi entity. As is said in Lindley on Partnership, 166:

"Merchants and lawyers have different notions respecting the nature of a firm. Commercial men and accountants are apt to look upon a firm in the light in which lawyers look upon a corporation."

In a recent opinion Mr. Justice Holmes observed that since Lindley wrote "the notion that the firm is an entity distinct from its members has grown in popularity, and the notion has been confirmed by recent speculations as to the nature of corporations." The modern tendency of the law is "at this day to complete its recognition of a partnership as a body of itself, with its own means appropriated to the payment of its own debts." Parsons, Partnership, 449; 30 Cyc., 422; *Lacey* v. *Cowan,* 162 Ala., 546, 50 South., 281. A partnership owns its own property and owes its own debts.

"The well-established rule which excludes creditors of the several partners from the partnership property until that has paid the debts of the partnership is derived from the acknowledgment that a partnership is

a body by itself.''   Menagh v. Whitwell, 52 N. Y., 146, 11 Am. Rep., 683; 6 Words and Phrases, 5195.

And see *House* v. *Thompson,* 3 Head (40 Tenn.), 512, 516:

While not meaning to indicate that a copartnership may be treated as a distinct entity out and out, we do say that, when it comes to formulating rules in respect of notice conveyable by such drafts, courts do well to bear in mind the conception held by practical men of commerce and finance as to the nature of a firm. They are the ones to be affected, as drawers, takers, and users of exchange; and they are such by force of necessity. For that reason, if others were lacking, we decline to extend or enlarge the exception to the general rule as to the power of a cashier of a bank to issue drafts, so as to include in that exception drafts or cashier's checks drawn in favor of a firm of which he is a member, or its creditors; this on the ground that to do otherwise would be to seriously hamper commercial transactions, when sound policy dictates that the amplest currency of such exchange should be facilitated by the law, and not retarded.

Furthermore, the name of the ''Tindle Cotton Company'' was *prima facie* that of a corporation, and not a firm. It will be so treated by way of a presumption in the absence of proof. (*Ingle System Co.* v. *Norris,* 132 Tenn., 472, 178 S. W., 1113); a *fortiori* when, as in this case, the basic inquiry is whether notice was

imparted thereby to those who in dealing with it took exchange issued by complainant bank in the "company's" behalf.

Finding no error in the decree of the chancellor, an affirmance results.